VAN NORTWICK, J.
Dorothy J. Thurston appeals an order denying her petition which sought a determination that she was a lineal descendant under section 732.108(2)(a), Florida Statutes (1995),[1] and a beneficiary of the estate *1002 of the deceased, Edward Lloyd Thurston. Appellant argues that the trial court erred in ruling (i) that a proceeding under section 732.108(2)(a) is an action relating to the determination of paternity within the meaning of section 95.11(3)(b), Florida Statutes (1995);[2] and (ii) that, since appellant had reached majority more than four years prior to filing her petition, her claim was time barred under section 95.11(3)(b). We agree with the trial court that a proceeding under section 732.108(2)(a) is an action relating to paternity to which section 95.11(3)(b) applies. Accordingly, we affirm.
Dorothy J. Thurston’s mother was married to Edward Lloyd Thurston on June 5, 1948. They divorced in 1957. Thurston was born on October 23, 1966. Her birth certificate lists Edward Lloyd Thurston as her father. When Edward Thurston died intestate on September 3, 1995, appellant filed a petition seeking a determination that she was a lineal descendant of the deceased pursuant to section 732.108(2)(a).
Section 732.108(2) provides three alternative means by which a person born out of wedlock can establish that she is a putative heir for purposes of intestate succession: (a) the natural parents marry before or after the birth of the person born out of wedlock; (b) the paternity of the father is established by an adjudication before or after the death of the father; (c) the father acknowledges the paternity in writing. Breedlove v. Estate of Breedlove, 586 So.2d 466, 467 (Fla. 1st DCA 1991). We agree with the trial court that both subparagraphs (a) and (b) of section 732.108(2) require an adjudication of paternity based upon clear and convincing evidence submitted by the person born out of wedlock. Id. The instant action was brought under subparagraph (a) of section 732.108(2). Thus, the supreme court’s decision in In re Estate of Smith, 685 So.2d 1206 (Fla.1996), cert. denied sub nom., Scruggs v. Wilson, 520 U.S. 1265, 117 S.Ct. 2434, 138 L.Ed.2d 195 (U.S.Fla. June 9, 1997)(No. 96-1615), in which the court held that an adjudication under subparagraph (b) to section 732.108(2) is an action relating to the determination of paternity to which section 95.11(3)(b) applies, is controlling in the instant case.
Our interpretation of subparagraph (a) of section 732.108(2) reflects the legislative intent expressed in the amendments to this section’s predecessor. Section 731.29(1), the predecessor to section 732.108(2), provided as follows:
Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father. Such illegitimate child shall inherit from his mother and also, when so recognized, from his father, in the same manner as if the child had been born in lawful wedlock. However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents’ kindred, either lineal or collateral, unless his parents have intermarried, in which event such illegitimate child shall be deemed legitimate for all purposes.
In Knauer v. Barnett, 360 So.2d 399 (Fla.1978), the Florida Supreme Court held that a right of inheritance under sec *1003 tion 731.29(1) could be established without the necessity of establishing paternity. The Knauer declaratory judgment action required an interpretation of section 731.29(1) to determine whether Charles Barnett, who claimed to be the son and blood issue of William L’Engle Barnett, was entitled to receive trust income and corpus under a trust document which provided for distribution of income and corpus to the surviving “blood issue” of William Barnett or to the collateral kindred of William if no blood issue existed. The collateral kin of William Barnett claimed that William had no blood issue.
After Charles was born in 1913, his mother, Marcelle, and William Barnett married. William Barnett acknowledged in writing that Charles was his son. Charles was raised and educated as the son of Marcelle and William Barnett. William Barnett again acknowledged in writing that Charles was his son for purposes of establishing Charles’ United States citizenship.
Based upon these facts, this court concluded that the subsequent marriage of Marcelle and William and William’s acknowledgment of paternity had satisfied the statutory requisites of section 731.29(1) and that Charles was not required to establish separately his paternity by William Barnett. Barnett v. Barnett, 336 So.2d 1213 (Fla. 1st DCA 1976), aff'd sub nom., Knauer v. Barnett, 360 So.2d 399 (Fla.1978). The court explained that compliance with the marriage and acknowledgment provisions of section 731.29(1) “raises the presumption of parenthood of the child in question to the status of a child born in wedlock.” Id. at 1218. In so ruling, this court rejected the contrary construction placed upon the statute by the lower court, stating, as follows:
The chancellor below, in construing the statute, ruled that a child was not rendered legitimate for all purposes by the signed acknowledgment of the person who in writing acknowledges himself to be the father of the child and also marries the mother; that because the statute refers to subsequent intermarriage of the parents, such means the child’s natural parents, thereby leaving open for adjudication at some future time the question of legitimacy. This construction in our view nullifies the obvious intent of the statute which was to lay at rest the question of legitimacy when the reputed father acknowledges the child before a witness and marries the mother. We do not believe it was the legislative intent to leave this question dangling for future litigation many years later (usually at the death of the father) when the problem of proof, though it could be difficult enough at the time of acknowledgment and marriage, would be far more difficult in later years.
Id. at 1216.
On review by the Florida Supreme Court, the court agreed that, upon the written acknowledgment by William Barnett and his marriage to Marcelle, pursuant to the provisions of section 731.29(1) Charles became the legitimate child of those parties and achieved a status equal to that of a child born in wedlock. Knauer, 360 So.2d at 403. Accordingly, Charles was not required to submit factual proof of paternity. Id. Said the court:
If section 731.29(1) emphasized factual proof of paternity rather than a simple attestation by which one willingly recognizes his status as a parent, [the collateral kin] could more persuasively argue that the statute contemplates their challenge to the paternity of Charles.
Id. at 404.
In Knauer, the supreme court contrasted a proceeding under 731.29(1) with proceedings for determination of paternity under sections 742.011, 742.021, and 742.031, Florida Statutes (1973), under which a woman could seek to have an unwilling party declared the father of her child so that she might enforce support obligations upon him. In the latter proceedings, the court emphasized that factual proof of bio *1004 logical paternity is of paramount importance. Id. The court explained:
Where an individual affirmatively seeks to assume the responsibilities of fatherhood, however, provisions for determination of paternity, like section 731.29(1), do not require proof of paternity by that person. Section 742.091, Florida Statutes (1973), provides that marriage by the “reputed father” to the mother of the illegitimate child shall render the child legitimate for all purposes. Again, factual proof of paternity is not required of the person who willingly seeks to assume the responsibilities of parenthood ....
By virtue of his formal acknowledgment of paternity with respect to Charles, William certainly achieved the status of a “reputed father” in the sense contemplated by section 731.29(1). Consequently, the marriage of William to Mar-celle made Charles legitimate for all purposes, thereby rendering factual proof of paternity by William irrelevant.

Id.

By enacting current section 732.108(2), the legislature replaced section 731.29(1) with provisions taken from section 2-109 of the Uniform Probate Code of 1969. See Historical and Statutory Notes, 20B Fla. Stat. Ann. 59 (West 1995)(annot. to § 732.108, Fla. Stat.); Uniform Probate Code § 2-109, 8 U.L.A. 66-69 (1983); see generally Karen A. Hauser, Inheritance Rights for Extramarital Children: New Science Plus Old Intermediate Scrutiny Add Up to the Need for Change, 65. U. Cin. L.Rev. 891 (1997)(describing Florida as a state which has adopted the 1969 Uniform Probate Code, but not the Uniform Parentage Act). In doing so, the legislature liberalized the marriage requirements of section 731.29(1) by providing in subparagraph (a) to section 732.108(2) that a person is a lineal descendant whether the marriage occurs before or after the birth of the person born out of wedlock. At the same time, however, we read subparagraph (a) as also imposing a requirement for the adjudication of paternity, because the legislature has provided that subparagraph (a) is only applicable where the “natural parents” participated in the marriage ceremony.
Thus, although section 732.108(2)(a) permits a person born out of wedlock to establish an intestacy relationship between that person and a man married to his or her mother, see Breedlove, it requires the putative heir to also establish that the marriage was between his or her natural parents. Under the authority of In re Estate of Smith, such a probate proceeding is a proceeding relating to the determination of paternity to which section 95.11(3)(b) applies. In re Estate of Smith, 685 So.2d at 1210; see also Garris v. Cruce, 404 So.2d 785, 786 (Fla. 1st DCA 1981), rev. denied, 413 So.2d 876 (Fla.1982). We recognize that by reading sub-paragraph (a) of the statute to require a determination of paternity, we are interpreting subparagraph (a) to overrule, in effect, the supreme court’s holding in Knauer as it applies to a situation in which a person born out-of-wedlock seeks to establish that he or she is a lineal descendant of a man who married the mother, but who did not separately acknowledge paternity; and to render the requirements of subparagraphs (a) and (b) of section 732.108(2)(a) substantively identical with respect to the requirement for a formal determination of paternity. Nevertheless, we conclude that the statutory language dictates such an interpretation.
AFFIRMED.
BOOTH AND JOANOS, JJ., CONCUR.

. Section 732.108(2) provides in pertinent part:
(2) For the purpose of intestate succession ... a person born out-of-wedlock is a lineal descendent of his mother and is one of the natural kindred of all members of the mother’s family. The person is also a lineal descendent of his father and is one of the *1002 natural kindred of all members of the father’s family, if:
(a) The natural parents participated in a marriage ceremony before or after the birth of the person bom out of wedlock, even though the attempted marriage is void.
(b) The paternity of the father is established by an adjudication before or after the death of the father.
(c) The paternity of the father is acknowledged in writing by the father.

. Section 95.11(3)(b) provides in pertinent part:
Actions other than for the recovery of real property shall be commenced as follows:
(3) Within four years.—
(b) An action relating to the determination of paternity, with the time running from the date the child reaches the age of majority.